IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHELLY ANN PERFETTO, )
 )
    Plaintiff, )
 )
-vs- ) Civil Action No. 13-1192
 )
CAROLYN W. COLVIN, )
COMMISSIONER OF SOCIAL SECURITY, )
 )
    Defendant. )

AMBROSE, Senior District Judge.

## OPINION
### and
### ORDER OF COURT

### SYNOPSIS

Shelly Ann Perfetto ("Perfetto") filed an application for supplemental security income in November of 2010, alleging a disability beginning on November 23, 2002 based upon depression, anxiety, phobias and hepatitis C. (R. 154, 175) The claim was denied on January 21, 2011 and, pursuant to Perfetto's request, a hearing was held on March 27, 2012. (R. 29) Perfetto testified at the hearing as did Tania Shullo, an impartial vocational expert. The ALJ denied the claim by written decision dated May 10, 2012. (R. 13) Perfetto requested review by the Appeals Council, which was denied. She then brought this action seeking judicial review pursuant 42 U.S.C. § 405(g).

Before the Court are Cross-Motions for Summary Judgment. (Docket Nos. [11] and [13]). Both parties have filed Briefs in Support of their Motions. (Docket Nos. [12] and [14]). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, the Plaintiff's Motion is granted and the Defendant's Motion is denied. This case is remanded for further consideration.

1

## I. BACKGROUND

Perfetto was born on June 4, 1965 and was 46 years old at the time of the hearing. (R. 874) She has a high school education and has worked in the past as a clerk, a receptionist, and a scheduler. (R. 176) Although substance free since June 20, 2010, Perfetto has a history of polysubstance abuse, including the use of crack cocaine, intravenous heroin, marijuana and alcohol between 1983 and 2010. (R. 911) She undergoes drug and alcohol counseling at Positive Pathways, has attended regular psychiatric visits since November or December 2011 and also sees a therapist twice a month. (R. 20) Perfetto lived on her own and in transitional housing during the relevant period. (R. 20, 40, 184, 772)

As stated above, the ALJ concluded that Perfetto has not been under a disability within the meaning of the Social Security Act since November 1, 2010. (R. 16) Specifically, although the ALJ found that Perfetto had not engaged in any substantial gainful activity, and that her bipolar disorder, polysubstance abuse and hepatitis qualify as severe impairments, those impairments or combinations thereof do not meet or medically equal one of the listed impairments. (R. 18) With respect to Perfetto's mental impairments, the ALJ concluded that she had only mild limitation in the activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace and no demonstrated episodes of decompensation. (R. 18-19) The ALJ also found that, although Perfetto's mental impairments have been severe for the required two year period under "paragraph C," and are currently attenuated by medication or psychosocial support, Perfetto had not demonstrated a history of 1 or more years of inability to function outside a highly supportive living arrangement "or that her mental impairments have caused repeated episodes of decompensation, or that even minimal increases in mental demands or changes in the environment would cause decompensation." (R. 19) The ALJ found that Perfetto had the residual functional capacity to perform light work with certain restrictions and that jobs exist in

significant numbers in the national economy that she can perform. (R. 19-24)

Perfetto assigns several errors to the ALJ's decision. Specifically, Perfetto challenges the ALJ's evaluation of treating specialists and therapists. She also urges that the ALJ failed to take into consideration the act that Perfetto's treatment was taking place in a structured living environment. Perfetto similarly criticizes the ALJ's findings regarding credibility. Finally, Perfetto assigns error to the ALJ's findings regarding residual functional capacity. For the reasons set forth below, I find that a remand is required.

## II. <u>LEGAL ANALYSIS</u>

### A) Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

3

last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

**B) Discussion**

1. Medical Sources

Perfetto objects to the manner in which the ALJ considered the medical evidence from her medical sources. The longstanding case law within this Circuit is that the report of a treating physician should be accorded greater weight than that of a non-examining consultant. *Brownawell v. Comm'r. of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008). This is true particularly if

4

that physician's treatment record or opinion "reflects expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), *quoting*, *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Indeed, "[i]t is axiomatic that the Commissioner cannot reject the opinion of a treating physician without specifically referring to contradictory medical evidence." *Moffatt v. Astrue*, 2010 U.S. Dist. LEXIS 103508 at * 6 (W.D. Pa. 2010). If a "treating source's opinion as to the nature and severity of a claimant's impairments is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record,' it will be given 'controlling weight.'" *Wiberg v. Colvin*, Civ. No. 11-494, 2014 WL 4180726 at * 21 (D. Del. Aug. 22, 2014), *quoting*, 20 C.F.R. § 404.1527(c).That is, unless there is contradictory evidence, an ALJ may not reject a treating physician's opinion. An ALJ's own credibility judgments, speculation or lay opinion is not sufficient. *Wiberg*, 2014 WL 4180726 *citing, Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Here, the ALJ acknowledged that Dr. Stephanie Richards, Perfetto's treating psychiatrist, issued a report dated March 21, 2012 "which would indicate that the claimant's mental health impairments are now disabling". (R. 22, 746) Indeed, Dr. Richards stated that Perfetto would "occasionally" have difficulty interacting with supervisors during an 8-hour work day, and would "often" have difficulty interacting with coworkers, managing even a low stress work environment, or maintaining concentration, pace or task persistence during an 8-hour work day. (R. 746) Nevertheless, the ALJ gave Dr. Richard's opinions "little weight" because she found they were "not supported by the necessary laboratory data or clinical findings." (R. 22)

Instead, she relied upon evidence such as Dr. Richard's December 2010 assessment of Perfetto's GAF at 55. (R. 22) She also looked to Dr. Lutka-Fedor's assessments in December of 2010. (R. 478-485) Dr. Lutka-Fedor indicated that Perfetto would have "moderate" difficulty with understanding, remembering and carrying out detailed instructions, but only "slight" difficulty

5

with understanding, remembering and carrying out short, simple instructions or making judgments on simple work-related decisions. (R. 484) The ALJ also found persuasive Dr. Lutka-Fedor's conclusion that Perfetto had only "moderate" difficulty interacting appropriately with the public, supervisors, and co-workers as well as responding appropriately to work pressures in a usual work setting and to changes in a routine work setting. (R. 484) The ALJ also noted that Dr. Lutka-Fedor opined that Perfetto's mood symptoms would improve if "clean from substances." (R. 22, 485)

As Perfetto points out, however, the 2010 GAF score and Dr. Lutka-Fedor's December 2010 report were recorded while Perfetto was living in supervised housing. (R. 824, 836-37) During that period of time, she attended nine to thirteen meetings a week and was surrounded by a supportive environment. All of her basic physical and mental health needs were being met. In contrast, Dr. Richard's 2012 assessment and Ms. Edward's notations were more current, but were also made after the time that Perfetto had transitioned to living alone. It stands to reason that an individual's mental health functional capacity may change from one environment to the other. The ALJ does not discuss what impact, if any, the difference that these environments and changed circumstances may have had on Perfetto's mental health functioning. Mental health records from the period of time Perfetto lived in supervised housing may not accurately reflect her mental health functioning on an on-going basis.

Because I cannot discern from the record what import, if any, the ALJ gave to the change in environments Perfetto experienced between the time during which the GAF score was recorded and Dr. Lutka-Fedor's December 2010 report was issued, and the time during which Dr. Richard's 2012 assessment was issued and Ms. Edward's notes were transcribed, a remand is warranted. The ALJ should address the impact, if any, of Perfetto's living environment on her mental health functioning and whether that changed when she went from

6

living in a structured and supportive environment to living on her own.[1]

### 2. Credibility

Perfetto also argues that the ALJ erred in his discussion of her credibility. The ALJ found that Perfetto's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (R. 20-21) The language is essentially boilerplate and not particularly helpful. *See Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). Indeed, as Perfetto points out, the only specific findings the ALJ makes with respect to credibility relate to her activities of daily living. The ALJ notes that, despite Perfetto's impairments, she is able to live on her own, shop for groceries monthly, take a bus if accompanied by someone, and drive a car. (R. 20) Monthly grocery shopping and the occasional riding of a bus do not appear to belie Perfetto's complaints of pain.

Nonetheless, because I have found that a remand is necessary with respect to the ALJ's assessment of the medical opinions, a remand is also required with respect to the ALJ's credibility assessment. *See Mason v. Shalala*, 994 F.2d 1056, 1068 (3d Cir. 1993).

### 3. Residual Functional Capacity Assessment

Perfetto describes the ALJ's findings regarding mental RFC as "grossly inadequate." *See ECF Docket No.* [12], p. 24. More specifically, Perfetto contends that the ALJ's conclusion regarding mental RFC limits is at odds with the Third Circuit Court of Appeals' decision in

---

[1] During remand, the ALJ should also consider whether her rejection of Theresa Edwards' testimony was erroneous. The ALJ gave Edwards' opinion "little weight," and noted that, as a therapist, Edwards did not qualify as an "acceptable medical source." While accurate insofar as Edwards is not a "medical source", Edwards did qualify as an "other source." 20 C.F.R. § 404.1513(d) "Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p. Consequently, wholesale rejection of Edwards' opinion is not appropriate where other evidence may establish impairment.

*Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004). I disagree. In *Ramirez,* the ALJ found that the claimant "often" suffered from deficiencies in concentration, persistence or pace. In contrast, here the ALJ found that Perfetto had only "moderate" deficiencies in concentration, persistence or pace. The findings are not equivalent. *See McDonald v. Astrue*, 293 Fed. Appx. 941, 947 n. 10 (3d Cir. 2008) and *Grimm v. Astrue*, Civ. No. 11-447, 2013 WL 24670 at * 1 n. 1 (W.D. Pa. Jan. 2, 2013).

## III. <u>CONCLUSION</u>

After a thorough review of the record and careful consideration of Perfetto's arguments, I find that a remand is warranted. Upon remand the ALJ shall engage in a thorough analysis consistent with the dictates of this Opinion.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHELLY ANN PERFETTO, )
)
    Plaintiff, )
)
 -vs- ) Civil Action No. 13-1192
)
CAROLYN W. COLVIN, )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

# ORDER OF COURT

Therefore, this 18th day of February, 2015, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No.11) is granted and Defendant's Motion for Summary Judgment (Docket No. 13) is denied.

It is further ordered that the decision of the Commissioner of Social Security is hereby vacated and the case is remanded for further proceedings consistent with the foregoing opinion.

    BY THE COURT:

    /s/ Donetta W. Ambrose
    Donetta W. Ambrose
    United States Senior District Judge